## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| V.V. and E.Q., individually and as next friends to minor C.O. <br><br> Plaintiffs, <br><br> v. <br><br> META PLATFORMS, INC., formally known as FACEBOOK, INC.; SNAP, INC.; SNAPCHAT, LLC; REGINALD SHARP; and EDDIE RODRIGUEZ, <br><br> Defendants. | **Case No. _____** <br><br> **March 2, 2023** <br><br> **Removed from:** Superior Court of Connecticut, Judicial District of Fairfield at Bridgeport |

### NOTICE OF REMOVAL

1.      PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332 and 1441, Defendant Meta Platforms, Inc. ("Meta") hereby removes to the United States District Court for the District of Connecticut the above-captioned state court action, originally filed as Case No. FBT-CV23-5050779-S in the Judicial District of Fairfield at Bridgeport, State of Connecticut. Defendants Snap, Inc. and Snap LLC, which is incorrectly named as Snapchat, LLC in the Complaint (collectively, "Snap," and together with Meta, the "Corporate Defendants"), consent to removal of this action to federal court. Removal is proper on the following grounds:

2.      This action is one of several lawsuits filed against various companies operating different software apps that allow users to create, share, and view content with other users—companies which are lumped together under the term "social media"—based on alleged harms

SF: 326117-4

stemming from use of those companies' communication apps. The key allegations about "social media" are largely identical in these cases, all of which name one or more of the Corporate Defendants. The only material difference in this case is a set of non-diverse individual defendants joined for the purpose of thwarting diversity jurisdiction.

3.     On October 6, 2022, the Judicial Panel on Multidistrict Litigation (JPML) formed a multidistrict litigation (MDL) to coordinate actions where plaintiffs allege harms from the use of communication apps like those operated by the Corporate Defendants. *See* Transfer Order, *In re Social Media Adolescent Addiction/Personal Injury Product Liability Litigation*, MDL No. 3047 (attached as **Exhibit A** to the Declaration of **Patrick M. Noonan** in Support of Defendant Meta Platforms, Inc.'s Notice of Removal ("Attorney Decl.")).

4.     As in the 141 cases currently pending in the MDL, Corporate Defendants in this action are two companies providing online communications services. Neither of the Corporate Defendants is a Connecticut defendant. In addition to the Corporate Defendants, the Complaint also names as defendants two unrelated individual who are alleged to reside in Connecticut, and accuses them of sexual assault and battery. But, as explained below, the citizenship of those non-diverse defendants should be ignored because they are fraudulently misjoined under Rule 20.

## I.     TIMELINESS OF REMOVAL

5.     On January 24, 2023, Plaintiffs V.V. and E.Q., individually and as next of friends to the minor C.O., (collectively, "Plaintiffs"), filed a Complaint against Defendants in the Judicial District of Fairfield at Bridgeport.

6.     Meta was served with the Complaint on February 1, 2023.

7.     In accordance with 28 U.S.C. § 1446(b), this Notice of Removal is timely field within 30 days of service of Plaintiff's Amended Complaint. *See Murphy Bros., Inc. v. Michetti*

2

*Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins upon service of summons and complaint).

8.      "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal."    28 U.S.C. § 1446(b)(2)(C)."

## II.    PROPRIETY OF VENUE

9.      Venue is proper in this district under 28 U.S.C. § 1441(a) because the state court where the suit has been pending is in this district.

## III.    SUMMARY OF ALLEGATIONS

10.     Plaintiffs V.V. and E.Q., residents of Connecticut, bring this case as the personal representatives of C.O., a 15-year-old Connecticut resident, in order to recover for alleged harms C.O. suffered allegedly as a result of the Corporate Defendants' communications apps.  Compl. ¶¶ 17, 24.

11.     Plaintiffs allege that Defendant Meta Platforms, Inc. is "a Delaware corporation with its principal place of business in Menlo Park, CA."  Compl. ¶ 19.

12.     Plaintiffs allege that Defendant Snap, Inc. is a Delaware corporation with a principal place of business in Santa Monica, CA. Compl. ¶ 20.

13.     Defendant Snap LLC, which is incorrectly named as Snapchat LLC in the Complaint, is a Nevada limited liability company with a principal place of business in Santa Monica, CA.  Its sole member is Snap, Inc., a Delaware corporation with a principal place of business in Santa Monica, CA.

3

14.     Defendants Reginald Sharp and Eddie Rodriguez (collectively, the "Individual Defendants"), who are improperly joined, are alleged to be residents of Connecticut.  Compl. ¶¶ 21-22.

15.     Like the cases that were centralized by the JPML into an MDL, the central allegation of Plaintiffs' Complaint against the Corporate Defendants concerns their apps' functionality for communicating and displaying and disseminating content among users.  Compl. ¶¶ 6-7.  The Complaint specifically faults particular features of the Corporate Defendants' apps relating to third-party content on those apps—including "notifications" and "algorithms" that allegedly show "advertising and content specifically selected and promoted" by the Corporate Defendants.  *Id*. ¶¶ 76-78, 81, 88.  The Complaint alleges that these features "create addiction in minor users" to the apps and expose them to harm.  *Id*. ¶¶ 76-99.  Furthermore, the Complaint alleges that algorithms in the Corporate Defendants' apps "identify and affirmatively direct users to one another via recommendations that the users connect, follow, friend, [or] add" one another.  *Id*. ¶ 68.  Plaintiffs bring claims against each of the Corporate Defendants for strict products liability, negligence, violation of the Connecticut Unfair Trade Practices Act, C.G.S. §§ 42-110G, *et seq*., unjust enrichment, and invasion of privacy, based on the alleged design of the Corporate Defendants' apps and their purported failure to warn of alleged defects.  *Id*. ¶¶ 220-317.

16.     The allegations against the Individual Defendants center on different alleged conduct than the conduct alleged against the Corporate Defendants.  The Individual Defendants are not alleged to have any association with the Corporate Defendants whatsoever—they are not officers, directors, or employees.  Instead, the Complaint alleges that C.O. "connected" with Reginald Sharp and Eddie Rodriguez through Snapchat, and that these Defendants "engag[ed] C.O. in sexually explicit communications" and manipulated C.O. into sending them explicit photos

4

of herself.  Compl. ¶¶ 200, 209.  The Complaint further alleges that Defendant Sharp "coerced C.O. into sneaking out of her home in the middle of the night to meet him" by "threaten[ing] to post [the explicit photos] on Snapchat," and that, when they met, Sharp sexually assaulted C.O. *Id.* ¶ 201.  Likewise, the Complaint alleges that Defendant Rodriguez "convinced C.O. to meet him in-person before school . . . but when C.O. got into his car, Defendant Rodriguez sexually assaulted her." *Id.* ¶ 209.

17.     The Complaint asserts two causes of action for assault and battery against the Individual Defendants—one against Defendant Sharp, and the other against Defendant Rodriguez—for their sexual exploitation of C.O.  Compl. ¶¶ 307-17.  There is no overlap at all between the causes of action brought against the Individual Defendants and those asserted against the Corporate Defendants: Counts 1-7 are alleged solely against the Corporate Defendants and Counts 8 and 9 are alleged solely against the Individual Defendants.  Compl. ¶¶ 220-317.  Indeed, the Complaint's claims against the Individual Defendants for their alleged sexual extortion and assault of C.O. have no connection to the claims against the Corporate Defendants for providing an online forum for third-party content and communications.

18.     Meta denies that liability or damages can be established by Plaintiffs.  Meta does not concede and reserves the right to contest, at the appropriate time, that any of Plaintiffs' allegations constitute a cause of action against it under applicable law.  No statement or reference in this Notice of Removal constitutes an admission of liability or a suggestion that Plaintiffs will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise.  Meta's notice seeks only to establish that the amount in controversy is more likely than not in excess of Section 1332's jurisdictional minimum and that there is complete diversity between Plaintiffs and the properly joined Defendants.

**IV.** **THIS COURT HAS SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1332**

19.    Removal is proper under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiffs and the properly joined Corporate Defendants, the amount in controversy exceeds $75,000, exclusive of interest and costs, and all other requirements for removal have been satisfied.

**A.** **There Is Complete Diversity between Plaintiffs and the Properly Joined Corporate Defendants.**

20.    Plaintiffs and the Corporate Defendants are "citizens of different States." 28 U.S.C. § 1332(a).

21.    Plaintiffs allege that they are each residents of Connecticut. Compl. ¶ 24. "An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile . . . [which] is the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Palazzo ex rel. Delmage v. Corio,* 232 F.3d 38, 42 (2d Cir. 2000). "Since most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents." *Coello v. Conagra Foods, Inc.*, 2015 WL 1064769, at *1 (D. Conn. Mar. 11, 2015).

22.    No Corporate Defendant is a citizen of Connecticut. For purposes of diversity jurisdiction, a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). "[T]he citizenship of a limited liability company is determined by the citizenship of each of its members." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016).

23.    Accordingly, for purposes of diversity jurisdiction, there is complete diversity between Plaintiffs and the properly joined Corporate Defendants.

**B.    The Citizenship of the Individual Defendants Should be Ignored Because They Are Fraudulently Misjoinded.**

24.    The citizenship of the Individual Defendants should be disregarded, and the claims against them severed from this litigation, because they have been fraudulently misjoined in order to defeat diversity jurisdiction.

25.    A defendant may remove a case to federal court based upon diversity jurisdiction in the absence of complete diversity if a plaintiff improperly joins a nondiverse party to defeat federal jurisdiction.  *See Mancinone v. Allstate Ins. Co.*, 2020 WL 5709675, at *6 (D. Conn. Sept. 24, 2020).  Fraudulent misjoinder, which is also known as procedural misjoinder, occurs when "a plaintiff purposefully attempts to defeat removal by joining together claims against two or more defendants where the presence of one would defeat removal and where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard."  *Id*; *accord In re Propecia (Finasteride) Prod. Liab. Litig.*, 2013 WL 3729570, at *4 (E.D.N.Y. May 17, 2013).

26.    "[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time" to preserve diversity jurisdiction.  *SCS Commc'ns, Inc. v. Herrick Co.,* 360 F.3d 329, 336 (2d Cir. 2004).  Courts in this Circuit have thus applied the fraudulent misjoinder doctrine to sever the claims against a fraudulently misjoined party whose presence would otherwise destroy complete diversity.  *Mancinone*, 2020 WL 5709675, at *6; *In re Propecia (Finasteride) Prod. Liab. Litig.*, 2013 WL 3729570, at *8; *In re Rezulin Prod. Liab. Litig.*, 168 F. Supp. 2d 136, 147 (S.D.N.Y. 2001).  Moreover, in applying the fraudulent misjoinder doctrine, a court "need not find that Plaintiffs acted in bad faith in order to

conclude that a severance and partial remand [of claims against misjoined defendants] is appropriate." *Mancinone*, 2020 WL 5709675, at *7.

27.    To determine whether a party is fraudulently misjoined, courts in this district typically look to state joinder rules. *Id*. at *6. Connecticut's standard for permissive joinder "does not markedly differ from that reflected in Rule 20" in that it "permits a plaintiff to bring several causes of action in the same complaint where, *inter alia*, the 'claims . . . aris[e] out of the same transaction or transactions connected with the same subject of action" and "[t]he several causes of action . . . affect all the parties to the action[.]'" *Id*. at *6-7 (citing Conn. Gen. Stat. § 52-97; Conn. Practice Book § 10-21); *see also* Fed. R. Civ. P. 20(a)(2) (permitting defendants to be joined in one action "if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action."). To satisfy this standard, a plaintiff must therefore demonstrate that (i) "the facts forming the basis upon which [it] claims relief constitute a single transaction or occurrence," and (ii) "that all plaintiffs and all defendant [are] common to all the claims[.]" *Caputo v. Brainard N. Assocs., LLC*, 2019 WL 3248546, at *5 (Conn. Super. Ct. June 7, 2019) (collecting cases).

28.    Applying this standard, courts regularly deny remand as to diverse defendants and sever claims against non-diverse defendants where the claims against those different defendant groups lack a "logical relationship" to each other, *M.W. v. Ford Motor Co.*, 2015 WL 1311029, at *3, *5 (M.D. Fla. March 24, 2015), or in other words, the claims against the different defendant groups "have no real connection" with one another. *See, e.g., Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996); *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 503 (E.D. Cal. 2008); *Hughes v. Sears, Roebuck & Co.*, 2009 WL 2877424, at *5 (N.D. W.Va. Sept. 3, 2009); *see also*

*Fierro v. Bauder,* 2004 WL 423141, at *2 (Conn. Super. Ct. Jan. 26, 2004) (finding that plaintiffs improperly joined claims against multiple defendants in same complaint, where "the facts forming the basis upon which the plaintiff claims relief in each count do not constitute a single transaction or occurrence").

29.     Where, as here, the underpinnings of the claims against the different sets of defendants are distinct, the claims cannot properly be joined together. *See Oda v. United States*, 2012 WL 692409, *2 (N.D. Cal. Mar. 2, 2012).  Courts find defendants are procedurally misjoined when, among other things, the claims against one defendant involve markedly different facts and evidence from the claims against another defendant—such as where the claims involve different circumstances, actions, or omissions, or different legal theories.  S*ee, e.g., Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006) (malpractice claims against medical defendants severed from product liability claims against tobacco company because the proof required for respective claims was "totally different"); *Cnty. Comm'n of McDowell Cnty. v. McKesson Corp.*, 263 F. Supp. 3d 639, 646–47 (S.D.W. Va. 2017) (claims against doctor who allegedly wrote illegitimate prescriptions for opioids were fraudulently misjoined with claims against pharmaceutical distributors that "allegedly flooded the market with opioids," because claims arose out of different transactions, involved different evidence, and rested on different legal theories); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 684-85 (D. Nev. 2004) (claims against pharmaceutical manufacturer fraudulently misjoined with claims against physicians and sales representatives, because "[i]ndividual circumstances, actions, and omissions were involved in each

Plaintiff's choice to ingest the medication, as well as each Defendant's role in, and responsibility for, that decision").[1]

30.     Here, the Corporate Defendants operate online communications platforms. Plaintiffs' core claims against the Corporate Defendants concern how their apps display and disseminate content to users, or enable communication among users.  For instance, Plaintiffs contend that particular aspects of the Corporate Defendants' services, such as "notifications," "algorithms," "disappearing messages," and "endless feed[s]" of content, Compl. ¶¶ 6-7, 42-43, 76-89, 183, allegedly "addicted" C.O. to the apps, which the Complaint alleges harmed her mental health. *Id*. ¶¶ 129-31.  Similarly, Plaintiffs contend that "algorithms" in the Corporate Defendants' apps "affirmatively select[] and send[] recommendations to users regarding people and/or groups they should 'friend,' join, or otherwise connect," thereby exposing them to harm.  *Id*. ¶¶ 68-71.

31.     By contrast, the Individual Defendants are not alleged to have any association with the Corporate Defendants whatsoever except their misuse of the Corporate Defendants' services— they are not officers, directors, or employees of the Corporate Defendants.  Rather, Plaintiffs' claims for assault and battery against the Individual Defendants are based solely on allegations that they criminally and intentionally sexually exploited and assaulted C.O.  The Complaint alleges that Defendants Sharp and Rodriguez "engag[ed] C.O. in sexually explicit communications" and manipulated C.O. into sending them explicit photos of herself.  Compl. ¶¶ 200, 209.  The

---

[1] *See also Sutton*, 251 F.R.D. at 504 ("[C]laims based on strict products liability against the removing Defendants are separate from Plaintiffs' claims of medical malpractice against the California Defendants."); *M.W.*, 2015 WL 1311029, at *3, *5 (finding procedural misjoinder where facts needed to support medical malpractice claim concerning treatment of Plaintiff's injuries were wholly distinct from facts that would support product liability and negligence claims about vehicle in which injuries occurred); *Atkins v. Smalbach*, 2015 WL 1138456, at * (M.D. Fla. Mar. 13, 2015) (finding procedural misjoinder where claim seeking approval of arbitration award against non-diverse defendant over fraudulent sales of securities shared no common questions of law or fact with claim alleging diverse defendant was an agent that participated in sale).

Complaint further alleges that Defendant Sharp "coerced C.O. into sneaking out of her home in the middle of the night to meet him" by "threaten[ing] to post [the explicit photos] on Snapchat," and that, when they met, Sharp sexually assaulted C.O. *Id*. ¶ 201.  Likewise, the Complaint alleges that Defendant Rodriguez "convinced C.O. to meet him in-person before school . . . but when C.O. got into his car, Defendant Rodriguez sexually assaulted her."  *Id*. ¶ 209.

32.     Whether Plaintiffs can prevail on their assault and battery claims against Individual Defendants "turn[s] on an entirely different set of factual and legal questions" than the claims against the Corporate Defendants, which are based on the allegedly defective design of their applications and their purported failure to warn users.  *Mancinone*, 2020 WL 5709675, at *7 (products liability claims against developer for constructing a defective home that later collapsed arose from a different transaction and raised different questions of law and fact than claims against insurer for improper denial of coverage); *M.W.*, 2015 WL 1311029, at *3, *5 (medical malpractice claim concerning treatment of Plaintiff's injuries raised different factual issues than product liability and negligence claims about vehicle in which injuries occurred); *In re Rezulin Prod. Liab. Litig*., 168 F. Supp. 2d 136, 144–45 (S.D.N.Y. 2001) (claims against drug manufacturers for negligent marketing and distribution and failure to warn did not arise from same transaction or occurrence as claims against health care provider for negligent administration of drug).  Plaintiffs' claims against the Individual Defendants thus do not arise from the same transaction or occurrence as their claims against the Corporate Defendants.

33.     For similar reasons, Plaintiffs' claims do not "affect all the parties to the action," as required by Connecticut's rule for joinder.  Conn. Gen. Stat. Ann. § 52-97.  Under this requirement, "all plaintiffs and all defendants must be common to all the claims and that all counts be triable at the same place under the rules as to venue."  *Caputo v. Brainard N. Assocs., LLC*, 2019 WL

3248546, at *5; *but see Mills v. Rita H. Carter Revocable Tr.*, 2013 WL 1110914, at *4-5 (Conn. Sup. Ct. Feb. 19, 2013). Plaintiffs' product liability claims against the Corporate Defendants (Counts 1-7) and assault and battery claims against the Individual Defendants (Counts 8-9) share "no overlapping theories of liability and little overlapping evidence . . . [with] no common wrongdoer or a singularly applicable set of facts to the claims." *Id.* at 6 (negligence claims based on injuries caused by property owner's alleged failure to maintain stairwell bore "no more than a tangential relationship" to breach of contract claims against insurer for failing to provide coverage for incident). Furthermore, Plaintiffs' claims "allege[] [harm] based upon conduct that took place on separate and distinct dates" by different groups of defendants, as the design choices that the Corporate Defendants made in building their apps preceded and occurred independently of the Individual Defendants' alleged sexual assault of C.O. *Ocasio v. Buchanan*, 2016 WL 550820, at *5 (Conn. Super. Ct. Jan. 13, 2016) (plaintiffs' suit to recover for injuries from successive accidents caused by multiple, unrelated defendants did not satisfy joinder requirement that all plaintiffs and all defendants be common to all claims).

34. Applying the fraudulent misjoinder doctrine to sever the claims against the Individual Defendants is particularly appropriate here because it will enable the parties to benefit from the significant efficiencies of coordination with dozens of substantially identical cases pending in the MDL in the Northern District of California. Removal and severance will thus "preserve the interests of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum." *Sutton*, 251 F.R.D. at 505; *see also Bd. of Cty. Comm'rs of Seminole Cty. v. Purdue Pharma L.P.*, 2019 WL 1474397, at *2 (E.D. Okla. Apr. 3, 2019) ("[A]ll pretrial matters in the instant case, including the remand motion, [should] be resolved in the MDL."). Indeed, "[i]f plaintiffs [are permitted to] escape the MDL by

12

joining multiple, unconnected and non-diverse parties in a state court of their choice, they [will] defeat the purposes of the MDL and deny defendants their right to removal." *In re Propecia (Finasteride) Products Liability Litig.*, 2013 WL 3729570, at *8.

35.    In sum, because Plaintiffs are citizens of Connecticut, because the claims against the Individual Defendants are fraudulently misjoined, and because none of the properly joined Corporate Defendants is a citizen of Connecticut, there is complete diversity of citizenship.  *See* 28 U.S.C. § 1332(a).

## V.    The Amount in Controversy Exceeds $75,000.

36.    Under 28 U.S.C. § 1332(a), diversity subject matter jurisdiction requires that the matter in controversy "exceed[] the sum or value of $75,000, exclusive of interests and costs."  A notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  "Evidence establishing the amount" in controversy is not required to be included with the notice of removal, but instead is required only "when the plaintiff contests, or the court questions, the defendant's allegation."  *Id*. at 89.

37.    Meta takes no position as to which of the Complaint's allegations are admitted or denied at this state, reserves the right to deny the Complaint's factual allegations, and denies that Plaintiffs are entitled to any relief.  But based on the allegations in the Complaint, the amount in controversy exceeds $75,000.

38.    Plaintiffs allege that they are entitled to compensatory damages for "emotional distress, physical harms, and pecuniary hardship" as well as the "mental harm" that C.O. purportedly suffered.  Compl. ¶¶ 260, 272-73, 286-87.  Plaintiffs further allege that C.O. attempted suicide and "has been hospitalized and in counseling because of the harms Meta and Snap caused

her; she has isolated herself socially; she has suffered from anxiety and depression, thoughts of self-harm and suicide; and tremendous pain and guilt[.]" *Id.* ¶¶ 189-90, 217.  Courts have found claims for damages based on similar allegations sufficient to satisfy the amount-in-controversy threshold.  *See, e.g.*, *Capitol Specialty Ins. Corp. v. IKO, Inc.*, 2013 WL 6196564, at \*4 (W.D. Ky. Nov. 26, 2013) (accepting plaintiffs' allegation that claim based on sexual assault met $75,000 requirement); *Luckett v. Delta Airlines, Inc.,* 171 F.3d 295, 298 (5th Cir. 1999) (plaintiffs' allegations of "an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and her temporary inability to do housework after the hospitalization" supported claim in excess of $75,000).

39.     The     Complaint     also     alleges     that     the     Corporate     Defendants "are further liable to Plaintiffs for punitive damages based upon their willful and wanton conduct toward underage users[,]" which "seriously harmed" minor users such as C.O.  Compl. ¶¶ 261, 274, 288, 301.  When "punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied." *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991).  Connecticut law permits punitive damages to be awarded for product liability claims, *see* Conn. Gen. Stat. Ann. § 52-240b, and claims brought under the Connecticut Unfair Trade Practices Act, *see* Conn. Gen. Stat. Ann. § 42-110g.  Even if the alleged compensatory damages alone were insufficient to meet the amount-in-controversy threshold, Plaintiffs' allegations of punitive damages confirm that the jurisdictional minimum is met here.

40.     Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because:

       a.   this is a civil action within the meaning of Section 1332(a);

b. the properly joined parties are citizens of different states as required by §
1332(a)(1); and

c. the amount in controversy exceeds $75,000 as required by § 1332(a).

41.     Accordingly, this action is properly removable under 28 U.S.C. § 1441.

## VI.     OTHER REMOVAL ISSUES

42.     Pursuant to 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served consent to removal.

43.     Defendants Snap, Inc. and Snap LLC consent to removal, and will file a separate Notice of Consent to Removal in this Court.   The Corporate Defendants expressly reserve, and do not waive, all defenses, including personal jurisdiction.

44.     The Individual Defendants are not properly joined in this action, and thus their consent to removal is not required.  *See Thorstenson v. Sinomax USA, Inc.*, 2020 WL 5594117, at *4 (D. Conn. Sept. 18, 2020).

45.     Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the state court docket sheet, the Complaint, and all other process, pleadings, and orders served on Meta and/or filed in the state court are attached as **Exhibits B-C** to the Attorney Decl., filed concurrently herewith. These filings constitute the complete record of all records and proceedings in the state court.

46.     If any question arises as to propriety of removal to this Court, Meta requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

47.     Upon filing the Notice of Removal, Meta will furnish written notice to Plaintiffs' counsel and will file and serve a copy of this Notice with the Clerk of the Judicial District of Fairfield at Bridgeport, pursuant to 28 U.S.C. § 1446(d).

48.     Meta reserves the right to amend or supplement this Notice.

**WHEREFORE**, Meta removes this action from the Judicial District of Fairfield at Bridgeport, State of Connecticut, No. FBT-CV23-5050779-S, to this Court.

March 2, 2023                                             Respectfully Submitted,

                                                         DONAHUE, DURHAM, & NOONAN P.C.

                                                         By: /s/  *Patrick M. Noonan*
                                                         Patrick M. Noonan, CT00189
                                                         PNoonan@ddnctlaw.com
                                                         Donahue, Durham, & Noonan P.C.
                                                         741 Boston Post Road
                                                         Guilford, CT  06437
                                                         Telephone: (203) 458-9168

                                                         Ashley M. Simonsen (Pro Hac Vice
                                                         Forthcoming)
                                                         asimonsen@cov.com
                                                         Covington & Burling LLP
                                                         1999 Avenue Of The Stars
                                                         Los Angeles, CA 90067-4643
                                                         Telephone: (424) 332-4800.

                                                         John J. DeBoy (Pro Hac Vice Forthcoming)
                                                         jdeboy@cov.com
                                                         Covington & Burling LLP
                                                         One CityCenter 850 Tenth Street, NW ·
                                                         Washington, DC 20001-4956
                                                         Telephone: (202) 662-6000

                                                         Nathan E. Shafroth (Pro Hac Vice
                                                         Forthcoming)
                                                         nshafroth@cov.com
                                                         Isaac D. Chaput (Pro Hac Vice Forthcoming)
                                                         ichaput@cov.com
                                                         COVINGTON & BURLING LLP
                                                         415 Mission Street, Suite 5400
                                                         San Francisco, CA 94105-2533
                                                         Telephone: + 1 (415) 591-6000

                                                         *Attorneys For Defendant Meta Platforms, Inc.*

16

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2023 the foregoing was electronically filed on the Court's ECF system and served by first-class mail as follows:

Michael R. Kennedy, Esq.
Brendan K. Nelligan, Esq.
Kennedy, Johnson, Schwab & Roberge, LLC
555 Long Wharf Drive, 13th Floor
New Haven, CT 06511

Matthew P. Bergman
Laura Marquez-Garrett
Glenn Draper
Social Media Victims Law Center
821 Second Avenue, Suite 2100
Seattle, WA 98104


*/s/  Patrick M. Noonan*
Patrick M. Noonan