## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| V.V. and E.Q., *individually and as next* | ) | 3:23-CV-284 (SVN) |
| *friends to minor C.O.*, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| META PLATFORMS, INC.; SNAP, INC.; | ) | May 24, 2023 |
| SNAPCHAT, LLC; REGINALD SHARP; | ) | |
| and EDDIE RODRIGUEZ, | ) | |
| Defendants. | ) | |

## RULING AND ORDER ON MOTION TO REMAND

Sarala V. Nagala, United States District Judge.

Plaintiffs V.V. and E.Q., the parents of minor child C.O., initiated the present action in Connecticut Superior Court against three corporations that operate several social media platforms (altogether, the "Corporate Defendants")—Meta Platforms, Inc. ("Meta"), which operates Facebook and Instagram; and Snap, Inc. and Snapchat, LLC (together, "Snap"), which operate Snapchat. Plaintiffs allege that the Corporate Defendants' social media platforms were defectively designed and marketed under Connecticut state law because they exposed C.O. to mental and physical harm. As part of the same action, Plaintiffs also bring claims for battery and assault under Connecticut state law against two individuals, Reginald Sharp and Eddie Rodriguez (the "Individual Defendants"), who allegedly sexually assaulted C.O. after contacting her through Snap's social media platform.

The Corporate Defendants removed the action to federal court, and they ultimately seek transfer of this action to a pending multidistrict litigation ("MDL") in the Northern District of California involving adolescent mental health issues arising from social media use. Plaintiffs, for their part, filed the present motion to remand the action back to Connecticut Superior Court,

contending that the federal courts lack subject matter jurisdiction over the action.  For the following reasons, the Court GRANTS Plaintiffs' motion to remand and directs the Clerk to remand this case back to Connecticut Superior Court.

## I.      FACTUAL BACKGROUND

The complaint contains the following allegations.  Plaintiffs and their minor child C.O., as well as the Individual Defendants, are residents of Connecticut.  Compl., ECF No. 1-4, ¶¶ 21–22, 24–25.  Meta, formerly known as Facebook, Inc., is a Delaware corporation with its principal place of business in California.  *Id.* ¶ 19.  The companies that comprise Snap are incorporated in Delaware and Nevada, and both maintain their principal places of business in California.  *Id.* ¶ 20.

C.O., now fifteen years old, opened Facebook and Instagram accounts when she was ten years old, and she opened a Snapchat account when she was twelve years old.  *Id.* ¶ 138.  According to Plaintiffs, the Corporate Defendants purport to impose age restrictions for the use of their products, but those efforts are not successful in keeping minors from creating accounts because the Corporate Defendants do not verify users' ages.  *Id.* ¶¶ 58, 140.  In addition, Plaintiffs allege that the Corporate Defendants allow minor children to open multiple accounts, which they often do secretly to evade parental oversight, and which C.O. did for that purpose.  *Id.* ¶¶ 140–50.  Plaintiffs further allege that the Corporate Defendants should have known that C.O. was a minor, and that she was creating multiple accounts to evade parental supervision, because the Corporate Defendants implement proprietary technology that reviews each user's account activity and collects data from the user's device to determine the actual age of the user with reasonable certainty.  *Id.* ¶¶ 152–55.

Plaintiffs allege that C.O.'s ongoing, secretive use of social media "coincided with a severe and steady decline in C.O.'s mental and physical health."  *Id.* ¶ 159.  Over time, she experienced

severe sleep deprivation, anxiety, depression, mood swings, inability to regulate her emotions, bullying by other minor users, and difficulty in school. *Id.* ¶¶ 160, 178. These symptoms resulted from various allegedly addictive features of the Corporate Defendants' social media platforms, including: frequent pop-up or "push" notifications designed to increase the frequency of user engagement; algorithms designed to recommend content based on the user's activity and demographics to encourage continued engagement; and features such as the "like" button and filters designed to encourage comparison among users. *Id.* ¶¶ 76, 78, 87–88, 91, 163, 165.

According to the complaint, the public nature of C.O.'s social media accounts, the algorithms that recommended other users with whom C.O. could connect, and the direct messaging features of the social media platforms resulted in several alleged sexual predators contacting and exploiting C.O. Around 2018, when she was only ten or eleven years old, an unidentified man contacted C.O. through Instagram's direct messaging features. *Id.* ¶ 188. The man coerced her into sending him explicit photos of herself and eventually threatened to upload the photos to the Internet. *Id.* ¶¶ 188–89. Plaintiffs allege that C.O., driven by fear that her parents would find out about her secretive social media use and of the man publishing the photos, attempted to commit suicide. *Id.* ¶ 189. When Plaintiffs eventually reported the man's exploitation to the police, the police informed them that Instagram was designed in such a way that they could not identify the man. *Id.* ¶ 191. Although Plaintiffs attempted to restrict C.O.'s social media use from that point on, they were unable to completely restrict her access to Internet-enabled devices, and she ultimately continued to secretly maintain social media accounts. *Id.* ¶ 192.

On July 15, 2019, when C.O. was twelve years old, she connected with Individual Defendant Sharp via Snapchat's "Quick Add" feature, which implements an algorithm that collects user activity and data and recommends other users with whom that user can connect. *Id.* ¶¶ 68,

198–99.  Sharp was a registered sex offender at that time.  *Id.* ¶ 199.  After connecting with C.O. on Snapchat, Sharp coerced C.O. into sending him explicit photos, then threatened to post the photos on Snapchat unless C.O. met him in person and engaged in sexual relations with him.  *Id.* ¶¶ 200–01.  On July 23, 2019, just eight days after connecting with him, C.O. snuck out of her house at night to meet Sharp, and he sexually assaulted her.  *Id.* ¶ 201.  Plaintiffs reported the incident to the police, who were able to identify Sharp based on his fictitious Snapchat account.  *Id.* ¶ 203.  Plaintiffs allege that, more than three years after Sharp's arrest for sexually assaulting C.O., he still appeared to have an active Snapchat account.  *Id.* ¶ 205.

In October of 2021, when C.O. was fourteen years old, she connected with Individual Defendant Rodriguez, a former police officer and at that time a registered sex offender, again via Snapchat's Quick Add feature.  *Id.* ¶ 209.  They began exchanging explicit photos, and, when she accepted his offer for a ride to school, he sexually assaulted her in his car.  *Id.*

In January of 2023, Plaintiffs initiated the present action in Connecticut Superior Court, individually and as next friends of C.O.  *Id.* ¶ 1.  Plaintiffs bring the following claims against the Corporate Defendants:  violation of the Connecticut Product Liability Act ("CPLA") under various theories, including strict liability for a design defect, *id.* ¶ 222, strict liability for failure to warn, *id.* ¶ 263, and negligence, *id.* ¶ 278; violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), *id.* ¶ 290; and various torts under Connecticut common law, including unjust enrichment, *id.* ¶ 294, invasion of privacy, *id.* ¶ 298, and negligence, *id.* ¶ 303.  In addition, Plaintiffs bring claims of assault and battery against the Individual Defendants.  *Id.* ¶¶ 311, 316.

## II.    PROCEDURAL HISTORY

Shortly after Plaintiffs initiated this action in Connecticut Superior Court, Meta timely removed the action to the U.S. District Court for the District of Connecticut.  Not. of Removal,

ECF No. 1, ¶ 7.  Meta seeks to invoke this Court's diversity jurisdiction, contending that there is diversity among all properly joined Defendants and that the non-diverse Individual Defendants are fraudulently misjoined.  *Id.* ¶¶ 19, 24.  Snap consented to the removal,[1] *id.* ¶ 1, and Meta contends that the consent of the Individual Defendants is not required because they are not properly joined, *id.* ¶ 44.  Plaintiffs promptly filed the present motion to remand the action back to Connecticut state court, contending that the Individual Defendants are not fraudulently misjoined, that this Court lacks subject matter jurisdiction over the action because complete diversity does not exist, and that removal was improper under the forum defendant rule because the Individual Defendants are citizens of Connecticut, where the action was brought.  ECF No. 17; *see* 28 U.S.C. § 1441(b)(2).

In the meantime, the Corporate Defendants filed a notice tagging this action for potential transfer to MDL No. 3047.  Cases transferred to the MDL have been found to involve "common factual questions" arising from allegations that major social media platforms, such as those operated by the Corporate Defendants here, "are defective because they are designed to maximize user screen time, which can encourage addictive behavior in adolescents."  *In re Soc. Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, MDL No. 3047, 2022 WL 5409144, at *1 (J.P.M.L. Oct. 6, 2022).  After the Judicial Panel on Multidistrict Litigation ("JPML") issued a conditional transfer order for this action, *see* Case MDL No. 3047, ECF No. 160; ECF No. 26-3, Plaintiffs moved to vacate the order, which automatically stayed the transfer.  The JPML thereafter calendared Plaintiffs' motion for its May 25, 2023, hearing date, and later issued a notice stating

---

[1] Meta's Notice of Removal represents that one of the companies comprising Snap has been improperly named as Snapchat, LLC, and that its proper name is Snap LLC.  Not. of Removal ¶ 1.  *See also* ECF Nos. 2 (notice of appearance of counsel for the Snap Defendants), 10 (Snap Defendants' corporate disclosure statements).  In moving to remand, Plaintiffs represent that the Connecticut Secretary of State lists a company named Snapchat, LLC but does not list a company named Snap LLC.  ECF No. 17 at 7 n.1.  Although courts often *sua sponte* drop improperly named parties and add parties according to their proper name, *see* Fed. R. Civ. P. 21, the Court will not substitute Snap LLC for Snapchat, LLC at this time, given that the proper name of that Defendant appears to be disputed.

that it will consider Plaintiffs' motion to vacate the conditional transfer order without oral argument.  Case MDL No. 3047, ECF No. 183 at 13.[2]

This Court held oral argument on Plaintiffs' motion to remand on May 17, 2023.

### III.    LEGAL STANDARD

Under 28 U.S.C. § 1441(a), a defendant may remove any civil action brought in state court over which the federal district court has original jurisdiction.  Relevant here, federal district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).  "The Supreme Court has interpreted 'citizens of different States' to grant jurisdiction only 'if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State.'"  *Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc.*, 943 F.3d 613, 617 (2d Cir. 2019) (quoting *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998)).  The removing party bears the burden of showing that the federal court properly has original jurisdiction.  *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 327 (2d Cir. 2011).

In addition to the subject matter jurisdictional requirement, the federal removal statute imposes various procedural requirements; if those requirements are not met, a plaintiff can move to remand the action back to state court within thirty days after removal.  28 U.S.C. §§ 1441, 1447(c).  Section 1441(b)(2) sets forth what is known as the "forum defendant rule," under which a state court action that would fall within the federal court's diversity jurisdiction cannot be removed "if any of the parties in interest properly joined and served as defendants is a citizen of

---

[2] This Court denied the Corporate Defendants' motion to stay this Court's consideration of Plaintiffs' motion to remand until the JPML resolves Plaintiffs' motion to vacate the conditional transfer order.  ECF No. 38.

the State in which such action is brought."  28 U.S.C. § 1441(b)(2); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 704–05 (2d Cir. 2019).

"In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability."  *Platinum-Montaur Life Scis., LLC*, 943 F.3d at 617 (quoting *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991), *superseded on other grounds as recognized by Contino v. United States*, 535 F.3d 124, 127 (2d Cir. 2008)).

## IV.    DISCUSSION

The question to be resolved is whether this matter may proceed in federal court.  Based on the allegations of the complaint, the Court lacks jurisdiction over the action due to a lack of complete diversity:  although Plaintiffs are diverse from the Corporate Defendants, both Plaintiffs and the Individual Defendants are citizens of Connecticut.  Compl. ¶¶ 19–22, 24–25.  *See also* 28 U.S.C. § 1332(c)(1); *Platinum-Montaur Life Scis., LLC*, 943 F.3d at 617.  In addition, removal is procedurally improper[3] under the forum defendant rule because the Individual Defendants are citizens of Connecticut, the forum state.  *See* 28 U.S.C. § 1441(b)(2); *Gibbons*, 919 F.3d at 704–05.  Despite these issues, Meta, on behalf of itself only, contends that removal is nonetheless proper, and this Court has diversity jurisdiction, because the Individual Defendants have been fraudulently misjoined in this action.  Snap has taken no position on Plaintiffs' motion for remand.[4]

---

[3] *See Shapiro v. Logistec USA, Inc.*, 412 F.3d 307, 313, 315 (2d Cir. 2005) (explaining that the forum defendant rule is procedural, not jurisdictional).

[4] The state court docket reflects that Defendant Rodriguez appeared as a self-represented party in the state action after the case was removed.  He has not appeared on the federal court docket, however, so the Court construes him as taking no position on Plaintiffs' motion.  Defendant Sharp has appeared in neither court.

After thorough consideration of the emerging doctrine of fraudulent misjoinder, the Court declines to exercise diversity jurisdiction by way of that doctrine here, for the reasons set forth below.

### A.  Fraudulent Misjoinder Doctrine

Fraudulent misjoinder is a relatively novel doctrine, distinct from the well-established doctrine of fraudulent joinder but derived from similar principles.  Both fraudulent joinder and fraudulent misjoinder are premised on the idea that "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir. 1998) (regarding fraudulent joinder); *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (quoting the same proposition when establishing the fraudulent misjoinder doctrine), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

To understand fraudulent *misjoinder*, it is first helpful to understand its underpinnings in the doctrine of fraudulent *joinder*.  In a case of fraudulent joinder, the court "overlooks the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004); *accord Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010).  Specifically, to establish diversity jurisdiction by way of fraudulent joinder, "the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia*, 138 F.3d at 461.  The fraudulent joinder standard is strict and is not satisfied

8

by simply showing that the complaint fails to state a claim.  *Mihok v. Medtronic, Inc.*, 119 F. Supp. 3d 22, 34–35 (D. Conn. 2015).  In sum, fraudulent joinder considers whether the claims against the non-diverse defendant are substantively plausible.

By contrast, fraudulent misjoinder, sometimes called "procedural misjoinder," considers whether the claims against a diverse defendant could proceed in the same action with claims against a non-diverse defendant, as a matter of permissive joinder under the relevant procedural rule.  *See In re Propecia (Finasteride) Prod. Liab. Litig.*, No. 12-MD-2331 (JG) (VVP), 2013 WL 3729570, at *4 (E.D.N.Y. May 17, 2013) (explaining the difference between fraudulent joinder and fraudulent misjoinder); *Geffen v. Gen. Elec. Co.*, 575 F. Supp. 2d 865, 869 (N.D. Ohio 2008) ("Courts have referred to this judicially-created doctrine as 'fraudulent misjoinder,' or 'procedural misjoinder.'").

The doctrine of fraudulent misjoinder "was first articulated by the Eleventh Circuit, which explained that '[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action.'"  *Kips Bay Endoscopy Ctr., PLLC v. Travelers Indem. Co.*, No. 14 CIV. 7153 ER, 2015 WL 4508739, at *6 (S.D.N.Y. July 24, 2015) (quoting *Tapscott*, 77 F.3d at 1360).  The Eleventh Circuit in *Tapscott* found diversity of citizenship satisfied in that case involving class representative plaintiffs, diverse defendants, and non-diverse defendants because, although the plaintiffs' claims against the non-diverse defendants were "colorable," they had "no real connection with" the controversy between the plaintiffs and the diverse defendants.  *Tapscott*, 77 F.3d at 1360.  The court concluded that the plaintiffs' attempt to defeat diversity jurisdiction by joining the non-diverse defendants was "egregious," and thus affirmed the district court's finding of diversity of citizenship.  *Id.*  District courts articulating the fraudulent misjoinder standard from *Tapscott* have explained that diversity jurisdiction may be

found by way of fraudulent misjoinder when a plaintiff joins together claims against diverse defendants and non-diverse defendants "where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard." *Kips Bay Endoscopy Ctr., PLLC*, 2015 WL 4508739, at *6 (citation and internal quotation marks omitted); *accord Mancinone v. Allstate Ins. Co.*, No. 3:20-cv-82 (KAD), 2020 WL 5709675, at *6 (D. Conn. Sept. 24, 2020).

B. Courts' Approaches to Fraudulent Misjoinder

The Second Circuit has not considered whether to apply the fraudulent misjoinder doctrine.[5] *Massey v. Cecil*, No. 1:19-cv-49 (BKS/CFH), 2019 WL 1780139, at *4 (N.D.N.Y. Apr. 23, 2019). The majority of district courts in this Circuit have assumed, with relatively little discussion, that the doctrine of fraudulent misjoinder would apply—although the assumption has been relatively benign because those courts also typically found that the diverse and non-diverse defendants were *not* fraudulently misjoined, and the cases were remanded to state court. *Abruzzo Docg Inc. v. Accept. Indem. Ins. Co.*, No. 20-CV-4160 (MKB), 2021 WL 5304058, at *7 (E.D.N.Y. Nov. 15, 2021) (finding claims properly joined and remanding to state court); *Massey*, 2019 WL 1780139, at *4 (same); *Kips Bay Endoscopy Ctr., PLLC*, 2015 WL 4508739, at *7 (same); *Sons of the Revol. in N.Y., Inc. v. Travelers Indem. Co. of Am.*, No. 14 CIV. 03303 LGS, 2014 WL 7004033, at *4 (S.D.N.Y. Dec. 11, 2014) (same); *In re Propecia Prod. Liab. Litig.*, 2013 WL

---

[5] Meta contends that the Second Circuit's language articulating the fraudulent joinder standard implies the recognition of, or at least is consistent with, the fraudulent misjoinder doctrine. The Court acknowledges that the Second Circuit has employed broad language when articulating the fraudulent joinder doctrine, and that similar principles underlie the fraudulent misjoinder doctrine. *See Bounds*, 593 F.3d at 215 ("A plaintiff may not defeat federal court diversity jurisdiction by improperly joining as a defendant a non-diverse party with no real connection to the controversy."); *Tapscott*, 77 F.3d at 1360 (quoting the same proposition when establishing the fraudulent misjoinder doctrine). But, as explained herein, a review of the relevant standards demonstrates that the fraudulent joinder and fraudulent misjoinder doctrines are distinct and involve different pleading defects. Moreover, the doctrines are noticeably distinct with respect to the widespread acceptance of the fraudulent joinder doctrine and the mixed reception of the fraudulent misjoinder doctrine, also explained herein. Accordingly, the Court will not interpret the Second Circuit's broad language when articulating the fraudulent joinder doctrine as necessarily signaling that it would adopt the fraudulent misjoinder doctrine.

3729570, at *14 (same); *In re Fosamax Prod. Liab. Litig.*, No. 1:06-MD-1789 (JFK), 2008 WL 2940560, at *9 (S.D.N.Y. July 29, 2008) (same). *But see A. Kraus & Son v. Benjamin Moore & Co.*, No. CV 05-5487 (ARR) (VVP), 2006 WL 1582193, at *5 (E.D.N.Y. June 7, 2006) ("And, in the absence of any clear direction from the Supreme Court or Congress, this court is reluctant to extend the jurisdictional confines of the federal courts by wading into the uncharted waters of fraudulent-egregious misjoinder.").

Although most district courts in this Circuit have assumed the applicability of the fraudulent misjoinder doctrine, the approach within this District does not quite mirror that trend. Specifically, only one case has applied the doctrine, whereas two cases have declined to apply it. In a case involving joinder of a builder and an insurance company after a portion of the plaintiffs' house collapsed, Judge Dooley acknowledged that while the Second Circuit has not yet addressed the concept of fraudulent misjoinder, at least one district court in the Circuit had applied it. *Mancinone*, 2020 WL 5709675, at *6 (citing *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 147–78 (S.D.N.Y. 2001)). Judge Dooley proceeded to apply the doctrine, and held that the builder, a non-diverse defendant, had been fraudulently misjoined because whether the builder was negligent during the home's construction twenty-five years earlier was factually and legally distinct from whether the insurer, a diverse defendant, wrongly denied coverage after the collapse. *Id.* at *7 (severing the claims against the non-diverse defendant and remanding those claims back to state court while keeping the claims against the diverse defendant in federal court). By contrast, Judge Chatigny has twice declined to assume the applicability of the fraudulent misjoinder doctrine, regardless of the particular facts or legal bases of the joined claims, reasoning that the better procedural vehicle to establish federal diversity jurisdiction would be for the diverse defendant to seek relief from misjoinder in state court before removing the action to federal court.

*Mack v. Bayer Corp.*, No. 3:07-CV-1151 (RNC), 2007 WL 4333815, at *1 (D. Conn. Dec. 10, 2007); *Labrecque v. Johnson & Johnson*, No. 3:15-CV-1141 (RNC), 2015 WL 5824724, at *3 (D. Conn. Oct. 2, 2015).

Outside the Second Circuit, the fraudulent misjoinder doctrine has received mixed reception.  Three circuit courts—the Eighth Circuit, Ninth Circuit, and Tenth Circuit—have declined to either adopt or reject the doctrine.  *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010) (surveying the federal courts' "mixed" reactions to *Tapscott*, declining "to either adopt or reject" the fraudulent misjoinder doctrine, and concluding that, "even if [the court] adopted the doctrine, the plaintiffs' alleged misjoinder in this case [was] not so egregious as to constitute fraudulent misjoinder"); *Cal. Dump Truck Owners Ass'n v. Cummins Engine Co.*, 24 F. App'x 727, 729 (9th Cir. 2001) (summary order) (assuming without deciding that the fraudulent misjoinder doctrine applied, finding claims properly joined, and remanding to state court); *Lafalier v. State Farm Fire & Cas. Co.*, 391 F. App'x 732, 739–40 (10th Cir. 2010) (summary order) (declining to decide whether to adopt the fraudulent misjoinder doctrine because remand was warranted on other grounds).

In a split opinion, the Fifth Circuit has emphatically refused to adopt the fraudulent misjoinder doctrine.  *Williams v. Homeland Ins. Co. of N.Y.*, 18 F.4th 806, 815 (5th Cir. 2021). The majority opinion acknowledged that fraudulent joinder was based on judicially recognized concepts of fairness rather than the text of the removal statute, *id.* at 812, but ultimately found the doctrine of fraudulent misjoinder to be "completely inconsistent with [the Fifth Circuit's] emphasis that improper joinder is a 'narrow exception' to § 1332(a)'s complete diversity requirement," *id.* at 815 (quoting *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007)).  The Fifth Circuit explained that "federal courts are courts of *limited* jurisdiction," and that adopting the fraudulent

misjoinder doctrine would "dramatically expand federal jurisdiction" without "a clear statutory hook." *Id.* at 816 (emphasis in original).  Employing similar reasoning as Judge Chatigny has used in declining to apply the fraudulent misjoinder doctrine, the Fifth Circuit explained that the proper procedure to establish federal diversity jurisdiction would be for a diverse defendant who believes the claims against it are not properly joined with claims against a non-diverse fellow defendant to first seek severance in state court, which would render the propriety of subsequent removal to federal court straightforward. *Id.* at 815.

A comparison of the separate opinions in *Williams* reveals lingering tension in the fraudulent joinder and misjoinder doctrines.  Judge Ho, who concurred with Judge Haynes' majority opinion, expressed doubt regarding the continued vitality of the fraudulent joinder doctrine because it, like fraudulent misjoinder, lacked a basis in the text of the removal statute. *Id.* at 820 (Ho., J., concurring).  By contrast, Judge Jones dissented and explained that she would have applied the fraudulent misjoinder doctrine to find diversity jurisdiction satisfied between the plaintiff and the properly joined defendant. *Id.* at 826 (Jones, J., dissenting).  She reasoned that the aim of the fraudulent joinder doctrine is "to prevent parties from manipulating their pleadings to deprive diverse defendants of the federal forum to which they are statutorily entitled," and that the fraudulent misjoinder doctrine set forth in *Tapscott* is logically consistent with that aim. *Id.* at 825–26.

The Court observes that the fraudulent misjoinder doctrine has germinated slowly since *Tapscott*, leaving it in an underdeveloped state.  It is no mere happenstance that the doctrine has not been considered by a significant number of circuit courts, including the Second Circuit, in the nearly thirty years since *Tapscott* was decided.  Rather, it is a consequence of the limited scope of appellate jurisdiction over remand orders.  *See* 28 U.S.C. § 1447(d) (providing that an "order

remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise," except in certain limited circumstances); *see also, e.g.*, *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 640 (2006) ("The policy of Congress opposes 'interruption of the litigation of the merits of a removed cause by prolonged litigation of questions of jurisdiction of the district court to which the cause is removed.'" (citation omitted)); *Shapiro*, 412 F.3d at 313 (interpreting § 1447(d) as prohibiting appellate review of remand orders based on (1) a non-jurisdictional defect raised by the plaintiff within thirty days after removal, or (2) the absence of subject matter jurisdiction); *In re WTC Disaster Site*, 414 F.3d 352, 366 (2d Cir. 2005) (declining to entertain a discretionary interlocutory appeal under 28 U.S.C. § 1292(b) of a remand order based on the absence of subject matter jurisdiction in light of § 1447(d)). The circuit courts that have considered the fraudulent misjoinder doctrine have generally reached it by way of complex procedural histories implicating the procedural mechanisms of other federal statutes. *See Williams*, 18 F.4th at 809–11; *In re Prempro Prods. Liab. Litig.*, 591 F.3d at 617–19. *But see Tapscott*, 77 F.3d at 1356 n.4 (explaining that the Eleventh Circuit granted a discretionary interlocutory appeal of the district court's remand order under § 1292(b)).

Importantly, district courts have raised numerous questions about how the doctrine should be applied and whether it should be applied at all. As one district court aptly explained when declining to apply the doctrine absent controlling circuit law:

> Conducting fraudulent misjoinder analysis in this case necessarily requires the Court to wade into a thorny thicket of unsettled law; disagreements exist as to numerous questions about the doctrine, and "the last thing the federal courts need is more procedural complexity." . . . Whether to apply the doctrine in the first place, whether the doctrine requires egregious misjoinder or some other level of bad faith before it can be invoked, whether to apply state or federal joinder law, and whether a federal court should be deciding issues of state joinder law in the first instance are among the unresolved inquiries the Court declines to decide here.

*Geffen*, 575 F. Supp. 2d at 871 (quoting *Osborn v. Metro. Life Ins. Co.*, 341 F. Supp. 2d 1123, 1127 (E.D. Cal. 2004)); *see also Palmer v. Davol, Inc.*, MDL No. 07-md-1842 (ML), 2008 WL 5377991, at *4 (D.R.I. Dec. 23, 2008) ("Without direction from the First Circuit, and in light of the rule of strict construction of the removal statute *coupled* with a significantly unsettled landscape surrounding application of the doctrine in federal courts, this Court declines to adopt a doctrine that will further complicate the question of removal and federal jurisdiction." (emphasis in original)); *Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co.*, 813 F. Supp. 2d 242, 246 (D. Mass. 2011) (concurring with the "sound reasons" expressed in *Palmer*); *Robinson v. Ortho-McNeil Pharm., Inc.*, 533 F. Supp. 2d 838, 842 (S.D. Ill. 2008) (declining to apply the fraudulent misjoinder doctrine because federal jurisdiction on removal "must be strictly and narrowly construed" and because "the contours of the doctrine are anything but clear").  As these district courts have expressed, there are at least three unresolved questions in the law of fraudulent misjoinder:  whether it must be egregious; whether it is governed by the relevant federal or state rule for permissive joinder; and, assuming it is governed by the relevant state rule, whether a federal court properly should interpret and apply a state's procedural rule for fraudulent misjoinder.

To begin, there is an open question among district courts regarding whether misjoinder must be egregious in order to justify exercising diversity jurisdiction by way of fraudulent misjoinder.  *In re Propecia Prod. Liab. Litig.*, 2013 WL 3729570, at *5; *Palmer*, 2008 WL 5377991, at *3–4.  *Tapscott* characterized the plaintiffs' attempt to join claims against diverse defendants with claims against non-diverse defendants as "egregious," but the court did not clearly articulate the basis of that finding or contemplate whether that finding was necessary to its holding. *See Tapscott*, 77 F.3d at 1360.

A number of cases have applied *Tapscott* as requiring a showing of egregiousness or fraud, more than a simple showing of mere misjoinder. *See, e.g.*, *In re Prempro Prods. Liab. Litig.*, 591 F.3d at 623 ("Without any evidence that the plaintiffs acted with bad faith, we declined to conclude they egregiously misjoined their claims."); *Walton v. Tower Loan of Miss.*, 338 F. Supp. 2d 691, 695 (N.D. Miss. 2004) (explaining that the court "would only be able to accept jurisdiction based on the misjoinder of either plaintiffs or defendants if such misjoinder were 'egregious,'" meaning "a level of misjoinder that was not only improper, but grossly improper"); *Bright v. No Cuts, Inc.*, No. Civ. A. 03-640, 2003 WL 22434232, at *4 (E.D. La. Oct. 27, 2003) (collecting cases for the proposition that "mere misjoinder does not constitute fraudulent misjoinder"). Those cases do not apply a uniform standard of egregiousness, however. *See Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 853 (S.D. Ill. 2006) (collecting cases articulating different standards of egregiousness); *Bird v. Carteret Mortg. Corp.*, No. 2:06-CV-588, 2007 WL 894841, at *4 (S.D. Ohio Mar. 22, 2007) ("Predictably, courts which have chosen to follow *Tapscott* have not been able to craft a bright-line rule which distinguishes 'egregious' misjoinders from 'mere' misjoinders."). On the other hand, a number of cases have rejected the egregiousness requirement altogether. *See, e.g.*, *Mancinone*, 2020 WL 5709675, at *7; *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d at 147–78; *Burns v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 401, 403 (S.D. W. Va. 2004); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 685 (D. Nev. 2004). The requirements of the doctrine are therefore a matter of significant dispute.

In addition, there is an open question regarding whether the propriety of joinder is governed by Federal Rule of Civil Procedure 20 or the procedural rule of the forum state from which the action was removed. *Tapscott* cited Federal Rule of Civil Procedure 20 without meaningfully considering whether to apply the federal or state rule, 77 F.3d at 1360, and some federal courts

have followed the *Tapscott* court's lead, *see Brooks v. Paulk & Cope, Inc.*, 176 F. Supp. 2d 1270, 1274 (M.D. Ala. 2001); *see also Williams*, 18 F.4th at 824 n.4 (Jones, J., dissenting).  The district courts that have thoughtfully considered the question, however, have applied the relevant state procedural rule for permissive joinder, rather than Federal Rule of Civil Procedure 20, because the fraudulent misjoinder inquiry "looks to whether the non-diverse party was misjoined in state court before removal."  *In re Fosamax Prods. Liab. Litig.*, 2008 WL 2940560, at *4 (emphasis added). *See also Osborn*, 341 F. Supp. 2d at 1128; *Conk v. Richards & O'Neil, LLP*, 77 F. Supp. 2d 956, 971 (S.D. Ind. 1999).  Indeed, "the majority of cases have held that state rather than federal joinder rules apply."  *Kips Bay Endoscopy Ctr., PLLC*, 2015 WL 4508739, at *6 (citation and internal quotation marks omitted).  When the relevant federal and state standards for permissive joinder are materially identical, of course, "the difference between applying federal and state standards for joinder may be more theoretical than practical."  *Conk*, 77 F. Supp. 2d 971 (finding the Indiana state rule for permissive joinder "closely parallel" to Federal Rule of Civil Procedure 20); *see also Osborn*, 341 F. Supp. 2d at 1128 (noting that, "where the federal rule of procedure on joinder tracks the corresponding state rule, the question [of whether to apply the federal rule or the state rule] would not have a practical import").  If the standards are different, however, the picture is hazier.

This brings the Court to the final unsettled question inherent in the doctrine of fraudulent misjoinder:  assuming fraudulent misjoinder is governed by the relevant state rule for permissive joinder, it is not clear whether a federal court can, or should, apply that state's procedural rule to a federal action for the purpose of determining subject matter jurisdiction.  *See Rutherford*, 428 F. Supp. 2d at 851 (reasoning that "matters of state civil procedure, including, presumably, joinder of parties and claims, have no bearing on the existence or nonexistence of federal subject matter

jurisdiction in a given case"); *Geffen*, 575 F. Supp. 2d at 871 (same). The fraudulent joinder doctrine requires a federal court to examine the plausibility of a state law claim against a non-diverse defendant under that state's substantive law, which is an ordinary task given that federal courts exercising diversity jurisdiction routinely examine state substantive law. State procedural law, however, "is almost never the subject of federal court determination," so the application of a state's procedural rule for fraudulent misjoinder purposes is an uncommon task for a federal court. *Bird*, 2007 WL 894841, at *4.

### C.   Whether to Apply Fraudulent Misjoinder Here

In light of the uncertainty surrounding the fraudulent misjoinder doctrine, the narrow construction of the removal statute, and the constrained nature of federal subject matter jurisdiction generally, the Court declines to apply the fraudulent misjoinder doctrine here. To begin, "'[i]t is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Hous., Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 61 (2d Cir. 2009) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)). The Court therefore must construe the limits of its own jurisdiction carefully.

Additionally, the "right of removal is entirely a creature of statute," and the "statutory procedures for removal are to be strictly construed." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (citations omitted). *See also Somlyo*, 932 F.2d at 1045 ("The right to remove a state court action to federal court on diversity grounds is statutory . . . and must therefore be invoked in strict conformity with statutory requirements."). The narrow construction of the federal removal statute furthers both "the congressional intent to restrict federal court jurisdiction" as well as the "independence of state governments." *Id.* at 1045–46; *accord Platinum-Montaur Life Scis.,*

*LLC*, 943 F.3d at 617.  Indeed, the U.S. Supreme Court has long instructed federal courts to "scrupulously confine their own jurisdiction to the precise limits which the [removal] statute has defined" in order to afford "[d]ue regard for the rightful independence of state governments." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941).  Drawing from those principles, the Second Circuit has instructed district courts to resolve any doubts *against* removability. *Platinum-Montaur Life Scis., LLC*, 943 F.3d at 617 (quoting *Somlyo*, 932 F.2d at 1045–46).

Bearing in mind those well-established principles counseling for restraint in the exercise of federal jurisdiction over a removed case, the Court cannot conclude that applying the fraudulent misjoinder doctrine would be appropriate here.  All three unsettled questions in fraudulent misjoinder law give the Court pause.  First, as noted above, it is unclear whether a finding of egregiousness of fraud would be required; without certainty as to the requirements of the doctrine, it would be imprudent to apply it.

Next, the Court cannot be sure that the difference between applying the federal Rule 20 joinder standard or the Connecticut standard for permissive joinder would be merely theoretical in this instance.  Plaintiffs and Meta jointly contend that the permissive joinder standard in Connecticut, Conn. Gen. Stat. § 52-97, "does not markedly differ from" the standard set forth in Federal Rule of Civil Procedure 20.  *Macinone*, 2020 WL 5709675, at *7.  As explained below, however, that question appears more complicated than the parties acknowledge.

In relevant part, § 52-97 provides that several claims may be joined in a single action if they arise "out of the same transaction or transactions connected with the same subject of action," provided that the joined claims "affect all parties to the action."  Conn. Gen. Stat. § 52-97. Connecticut courts have recognized that, "[h]istorically, the Connecticut Supreme Court has taken a liberal approach to permissive joinder."  *Costello v. Goldstein & Peck, P.C.*, No. FBT135029935,

2017 WL 1334321, at *3 (Conn. Super. Ct. Mar. 21, 2017), *aff'd*, 187 Conn. App. 486 (2019) (citations and internal quotation marks omitted).  *See also Goggins v. Fawcett*, 145 Conn. 709, 710 (1958) (explaining that the joinder statute is "liberally construed").  That liberal construction is consistent with the federal courts' liberal interpretation of Federal Rule of Civil Procedure 20.  *See Allstate Ins. Co. v. Baturov*, 544 F. Supp. 3d 264, 267 (E.D.N.Y. 2021) (citing, among other cases, *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

Despite the Connecticut Supreme Court's instruction to interpret § 52-97 liberally, though, there is a split within the Connecticut Superior Court regarding whether to strictly or liberally interpret the statute's requirement that the joined claims affect all parties to the transaction.  *Parks v. Town of Southington*, No. CV205027166S, 2021 WL 778993, at *3 (Conn. Super. Ct. Feb. 2, 2021) (collecting cases and explaining that some courts require "commonality between the parties as to all claims," whereas other courts require only that the joined parties "have an interest in the outcome of each claim").  Based on this divergence within the Connecticut Superior Court, this Court could not be sure that the federal standard would be materially identical to the state standard. Assuming the state standard applies here, assessing permissive joinder would entail diving into the complicated realm of Connecticut state procedural rules, which this Court is ill-suited to do. [6]

Finally, the Court questions whether a federal court can, or should, apply Connecticut's procedural rules to this federal action for the purpose of determining subject matter jurisdiction. *See Rutherford*, 428 F. Supp. 2d at 851.  For its part, Meta contends that there is no logical reason to allow a plaintiff to evade federal diversity jurisdiction by pleading around a state's *procedural*

---

[6] Relatedly, the Fifth Circuit's majority opinion in *Williams* reasoned that the typical remedy for a fraudulent misjoinder circumstance—severance of the claims against the non-diverse defendant and remand of just those claims back to state court, *see Mancinone*, 2020 WL 5709675, at *8—would not cure a subject matter jurisdictional defect existing at the time of removal. *Williams*, 18 F.4th at 816 (explaining that the federal court must "look at jurisdiction at the time of removal, not after a federal court severance").

rules when the same plaintiff would not be allowed to evade federal diversity jurisdiction by attempting to plead around the state's *substantive* law.  While Meta's contention might appear sturdy when viewed solely in reference to fraudulent joinder and misjoinder, it grows shakier when considered alongside long-established principles distinguishing between state substantive law and procedural rules in diversity cases.  *E.g.*, *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."); *Sarkees v. E.I. Dupont de Nemours & Co.*, 15 F.4th 584, 588 (2d Cir. 2021) (same).  In other words, it is entirely unclear whether it is proper for a federal district court to examine state procedural rules for permissive joinder for the purpose of applying the fraudulent misjoinder doctrine. That unsettled issue looms particularly large here, where the Connecticut standard for permissive joinder is itself unsettled.

In light of the well-established principles that federal courts are courts of limited jurisdiction and that the removal statute should be construed strictly, many district courts have viewed the fraudulent misjoinder doctrine with "caution" because the doctrine has "the effect of expanding the removability of state court cases that, on their face, do not fall within the limited jurisdiction of the federal courts."  *Bird*, 2007 WL 894841, at *4–5.  *See also Williams*, 18 F.4th at 816; *Geffen*, 575 F. Supp. 2d at 871 (declining to apply the fraudulent misjoinder doctrine in light of the "well-settled rule that removal jurisdiction is to be strictly construed, and all doubts about the propriety of removal are to be resolved in favor of remand").  The Court agrees with those district courts and concludes that, absent instruction from the Second Circuit or the U.S. Supreme Court, it should not find diversity jurisdiction here by "wading into the uncharted waters of" the fraudulent misjoinder doctrine.  *A. Kraus & Son*, 2006 WL 1582193, at *5.

Finally, the Court observes that refraining from applying the fraudulent misjoinder doctrine does not leave Meta entirely without an avenue to pursue the remedy it seeks. As many courts have explained, a diverse defendant who believes the claims against it are improperly joined with claims against a non-diverse fellow defendant can seek severance in the state court prior to removal. *Williams*, 18 F.4th at 815; *Labrecque*, 2015 WL 5824724, at *3; *Osborn*, 341 F. Supp. 2d at 1127. This approach would allow the state court to resolve disputed matters of state court procedure without requiring federal court intrusion into that domain, and would in turn simplify the matter of whether federal diversity jurisdiction may be properly exercised. *Williams*, 18 F.4th at 815–16. Although Meta contends that the state court may not resolve a severance motion within the one-year timeframe for removal set forth in 28 U.S.C. § 1446(c)(1), that is based on speculation alone.[7] This Court does not have any reason to believe the Connecticut Superior Court would not act expeditiously, particularly if made aware of the exigencies of a given case, such as the existence of a related MDL and the deadline for removal.

If squarely presented with the question of whether to adopt the fraudulent misjoinder doctrine, it is possible that the U.S. Supreme Court or the Second Circuit could find that it is appropriate to apply in federal court. Indeed, the core of Meta's argument urging this Court to apply the fraudulent misjoinder doctrine is that it is logically consistent with the aim of the widely accepted fraudulent joinder doctrine, which is "to prevent parties from manipulating their pleadings to deprive diverse defendants of the federal forum to which they are statutorily entitled." *Williams*, 18 F.4th at 826 (Jones, J., dissenting). *See also Greene*, 344 F. Supp. 2d at 684–85 (agreeing that the fraudulent misjoinder doctrine "is a logical extension of the established

---

[7] At oral argument, Meta hypothesized that a product liability case like this could be designated as a complex matter, which may result in a longer resolution time for motions (a contention Plaintiffs disputed), and that the Connecticut Superior Court might hold a severance question in abeyance to resolve other preliminary matters in the case.

precedent that a plaintiff may not fraudulently join a defendant in order to defeat diversity jurisdiction in federal court"); *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Prac. & Prods. Liab. Litig.*, MDL No. 2:14-mn-2502 (RMG), 2016 WL 7339811, at *3 (D.S.C. Oct. 24, 2016) (citing *Greene* with approval). Absent direction from a controlling appellate court, however, this Court is left with significant, unresolved questions that have been answered many different ways by many different courts.[8] In considering those unsettled issues, the Court finds steady footing in the familiar principles guiding the federal courts' limited scope of jurisdiction and strict construction of the removal statute. *Owen Equip. & Erection Co.*, 437 U.S. at 374; *Syngenta Crop Protection, Inc.*, 537 U.S. at 32; *Platinum-Montaur Life Scis., LLC*, 943 F.3d at 617.

Accordingly, the Court declines to apply the fraudulent misjoinder doctrine here and provides no opinion on whether Plaintiffs' claims against the Individual Defendants are properly joined with their claims against the Corporate Defendants. As complete diversity between the parties does not exist here—and Meta's only basis for invoking this Court's subject matter jurisdiction is the fraudulent misjoinder doctrine, which the Court will not apply—the Court concludes that it lacks subject matter jurisdiction over this action. For that reason, Plaintiffs' motion to remand must be granted.

## V.    CONCLUSION

For the reasons described above, Plaintiffs' motion to remand, ECF No. 17, is GRANTED. The Clerk is directed to remand this case to the Connecticut Superior Court, Judicial District of

---

[8] After the Court held oral argument on Plaintiffs' motion to remand, Meta filed a notice of supplemental authority directing this Court's attention to two recent U.S. Supreme Court opinions. ECF No. 48. In those cases, the plaintiffs alleged that a terrorist organization used various social media platforms to recruit followers, and they sought to hold the corporations who operated those platforms liable for the harms that followed. ECF Nos. 48-1, 48-2; *Twitter, Inc. v. Taamneh*, 598 U.S. __ (2023); *Twitter, Inc. v. Mehier*, 598 U.S.__ (2023). The U.S. Supreme Court held that the plaintiffs failed to state plausible claims under the relevant federal statute. The Court expresses no opinion on whether those U.S. Supreme Court decisions impact the Corporate Defendants' potential liability in this state law product liability action. The Court simply observes that those decisions did not consider fraudulent joinder or misjoinder and thus have no bearing on the Court's decision not to apply the fraudulent misjoinder doctrine.

Fairfield, on the eleventh day following issuance of this order, *see* D. Conn. L. Civ. R. 83.7, and to thereafter close this case.

  **SO ORDERED** at Hartford, Connecticut, this 24th day of May, 2023.


       */s/ Sarala V. Nagala*
      SARALA V. NAGALA
      UNITED STATES DISTRICT JUDGE